Filed 4/11/25  P. v. Esparza CA5

<u>**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>BOBBY ESPARZA,<br><br>    Defendant and Appellant. | F086810<br><br>(Super. Ct. No. F08907998)<br><br><br>**OPINION** |

---

APPEAL from a judgment of the Superior Court of Fresno County.  Gregory T. Fain, Judge.

James Bisnow, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Kimberley A. Donohue, Assistant Attorney General, Julie A. Hokans and Henry J. Valle, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Defendant Bobby Esparza pled guilty to voluntary manslaughter, home invasion robbery, and first degree residential burglary. He was sentenced to 43 years pursuant to a stipulated plea agreement. Defendant appeals the denial of his petition for resentencing under Penal Code[1] section 1172.6. He contends the trial court erred in concluding that he acted with reckless disregard of human life during an armed robbery that turned deadly. We conclude that substantial evidence supports the court's ruling and affirm.

## PROCEDURAL BACKGROUND

On March 28, 2013, the Fresno County District Attorney filed a second amended information charging defendant with murder (§ 187, subd. (a), count 1), voluntary manslaughter (§ 192, subd. (a), count 2), home invasion robbery (§ 213, subd. (a)(1)(A), counts 3 and 4), and first degree residential burglary (§§ 459, 460, subd. (a), count 5). As to counts 1, 3, and 4, the information further alleged defendant personally and intentionally discharged a firearm (§ 12022.53, subd. (c)) and as to count 2, the information alleged defendant personally used a firearm (§ 12022.5, subd. (a)).

On the same day, defendant pled guilty to counts 2, 3, 4, and 5. Defendant admitted the firearm enhancement allegations associated with counts 2, 3, and 4. The remaining counts and allegations were dismissed. Defendant stipulated to a sentence of 43 years in state prison pursuant to the plea agreement.

On May 17, 2013, the trial court sentenced defendant to the stipulated 43-year sentence as follows: on count 3, nine years (the upper term) plus 20 years for the firearm enhancement (§ 12022.53, subd. (c)), on count 4, two years (one-third the middle term) plus six years eight months for the firearm enhancement (§ 12022.53, subd. (c)), on count 2, two years (one-third the middle term) plus three years four months for the firearm enhancement (§ 12022.5, subd. (a)), to be served consecutively with each other, and on count 5, six years (the upper term) stayed pursuant to section 654.

---

[1] All further statutory references are to the Penal Code.

On July 8, 2022, defendant filed a petition for resentencing under section 1172.6.[2] On July 27, 2022, the trial court determined that defendant was eligible within the provisions of section 1172.6, subdivision (c) for a prima facie determination, and appointed counsel to represent him.

On August 26, 2022, the prosecution opposed defendant's petition for resentencing. On January 4, 2023, defendant filed a response to the prosecution's opposition.

On April 3, 2023, a hearing was held on defendant's petition for resentencing. After the hearing, the trial court concluded defendant had established a prima facie case for relief. The court issued an order to show cause and set the matter for further proceedings.

On May 25, 2023, the prosecution filed an evidentiary hearing brief and argument.

On June 8, 2023, the trial court set the matter for an evidentiary hearing.

On August 14, 2023, the trial court held an evidentiary hearing on defendant's resentencing petition pursuant to section 1172.6, subdivision (d)(3). The court denied the petition with prejudice and found that defendant was a major participant in the home invasion robbery who acted with reckless indifference to human life.

---

[2] On June 30, 2022, former section 1170.95 was renumbered to section 1172.6 (see Assem. Bill No. 200 (2021–2022 Reg. Sess.)). There were no substantive changes to the statute. Defendant filed his petition under former section 1170.95, but we will cite to current section 1172.6 throughout this opinion for the sake of consistency.

# FACTUAL BACKGROUND[3]

On December 27, 2008,[4] Jeremy Miller's ex-wife, C.R., and their daughter drove Miller from Redding back to Fresno where he lived. C.R. and her daughter spent the night at Miller's house in Fresno. N.Y. and B.M. were also living there at the time.

On the morning of December 28, C.R., N.Y., B.M., and friends, R.V. and K.V.W. and their two-year old son, were at Miller's house. Later that morning, C.R. and Miller left for the store. When they returned, C.R. noticed two males walking toward the house. C.R. and Miller walked to the front door of the house. Before entering the house, C.R. looked back toward the street and saw the two males standing on the sidewalk in front of the house. C.R. and Miller entered the house and closed the door. Soon after they entered the house, the front door "burst open" and the two men came inside. C.R. identified one of the men as defendant. Both men had guns. Defendant pointed his gun "all around." He specifically pointed his gun at C.R. and Miller. The two males yelled, "This is a home invasion, everybody get the Fuck [*sic*] down. Give us your shit. Give us your shit."

C.R. ran out of the house. While she and N.Y. were in the front yard, she heard a gunshot. When N.Y. heard the gunshot, he ran back inside the house with a metal bar. C.R. heard tussling inside the house and the metal bar hitting something. C.R. entered the house again to rescue her daughter and they hid inside a closet.

From inside the closet, C.R. heard R.V. say, "[J]ust take it, just take it, don't hurt anybody." She also heard more tussling inside the house, breaking glass, and a second gunshot. After the house was quiet, C.R. came out of the closet to find the house "in

---

[3] The facts are taken from the preliminary hearing transcript, admitted into evidence at the evidentiary hearing on August 14, 2023, and considered by the trial court in making its ruling on defendant's resentencing petition. Defendant testified at the evidentiary hearing which the court relied on as well; a summary of defendant's recent testimony offered as additional evidence at the evidentiary hearing is set forth below.

[4] All further dates are in the year 2008 unless otherwise specified.

pieces" and "dishevel[]ed." There were broken things everywhere, blood, glass, and marijuana on the ground. She saw N.Y. covered in blood running around frantically. C.R. and her daughter left the house.

K.V.W. saw two males with guns enter the house on the morning of December 28. K.V.W. left the house with her son when no one was looking. While K.V.W. was in the side yard, Miller exited the garage and said, "I have been shot, my daughter's in there."

R.V. was sitting in the living room of the house when the two males, one of which he identified as defendant, "busted through" the front door. R.V. heard defendant state loudly, "This is a robbery. Everybody on the ground." R.V. ran outside to get a weapon so he could defend himself. He found a small knife in his pocket. While he was outside, R.V. heard a gunshot that came from inside the house. Defendant followed R.V. into the backyard with a black semiautomatic handgun. He pointed the gun at R.V. While defendant pointed the gun at R.V. he said, "Put down the knife, bitch, and where is it at?" Defendant also asked R.V., "Where's the money at?" Defendant walked R.V. back into the house while still holding his gun. R.V. showed defendant where a jar of marijuana was located and gave it to him. N.Y. walked into the bedroom where defendant and R.V. were located. N.Y. was bleeding from his head and also handed defendant a box.

After defendant obtained the jar and box, he headed toward the front door. R.V. saw blood on the floor as he followed defendant into the living room of the house and toward the front door. He heard N.Y.'s voice crying for help and found N.Y. and defendant outside the front door struggling on the ground. R.V. grabbed a piece of broken door frame and hit defendant's head with it several times. Defendant still had the gun in his hand. B.M. then came outside with an aluminum baseball bat. R.V. took the bat from her and hit defendant on the head with the bat as many times as he could until defendant dropped the gun. N.Y. took the gun when defendant dropped it. Defendant left the area, and R.V. saw that Miller had been shot. Miller died as a result of a gunshot wound to his right shoulder.

Fresno Police Officer J. Hustedde was on duty on December 28 at around 10:00 a.m. when he was dispatched to a house in Fresno. R.V. was standing outside when Hustedde arrived. R.V. told Hustedde that his friend had been shot and was lying outside the garage. Hustedde found the victim, later identified as Miller, lying lifeless outside the garage bleeding profusely. Inside the house, Hustedde found a loaded semiautomatic Glock handgun. Hustedde also noticed a "trail of marijuana" leading from inside the house to the outside, as well as blood on the walls and furniture moved, indicating a "large disturbance" had taken place inside.

## DISCUSSION

Defendant argues he is entitled to resentencing because the evidence is insufficient to support the trial court's finding that he acted with reckless disregard for human life under section 189, subdivision (e)(3) as amended by Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill No. 1437).[5] He claims that he should also be entitled to withdraw from his stipulated plea because his admission to discharging a firearm during the robbery was not based on the facts of the case. The People argue substantial evidence supports the court's finding that defendant was a major participant who acted with reckless indifference to human life. We agree with the People.

### A. **Additional Background**

#### 1. **Briefing on the Resentencing Petition**

The prosecutor filed a brief prior to the evidentiary hearing. The prosecutor argued that under the relevant case law, including *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*), *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*), and *People v. Bascomb* (2020) 55 Cal.App.5th 1077 (*Bascomb*), defendant was a major participant in the home invasion

---

**5** Defendant does not challenge the trial court's finding that he was a major participant in the robbery. Thus, we only address whether substantial evidence supports the court's conclusion that defendant acted with reckless indifference for human life.

6.

robbery who acted with reckless indifference to human life and was ineligible for relief under section 1172.6.

## 2. Defendant's Testimony at the Evidentiary Hearing

On December 28, at about 10:00 a.m., defendant and his oldest brother, Tony, "scoped out" a house they planned to burglarize later. When Tony and defendant walked past the house that morning, they saw a vehicle pull up, and a man and woman got out. Tony "made up his mind" that they were going to burglarize the house once they saw two people walking inside. Both Tony and defendant were armed with guns.

As soon as defendant and Tony walked inside the house, defendant slipped and "it was chaos." Defendant had his gun out, but he does not recall pointing it at anyone. R.V. had a knife and defendant followed him outside and confronted him. Defendant heard a gunshot while he was outside in the backyard.

Defendant told R.V., "Put down the knife, bitch." (Boldface omitted.) R.V. dropped the knife, and defendant walked him back inside the house while still carrying his gun. R.V. took defendant inside into a bedroom and gave him a box and jar of marijuana. Defendant took it. The house inside looked like a "bomb blew up." Defendant noticed coffee, chocolate milk, and blood on the floor.

Then, defendant headed toward the front door and called for Tony. N.Y. told defendant, " '[Tony] left you' " and defendant panicked. N.Y. attacked defendant. A struggle ensued over possession of the gun; N.Y. punched and kicked defendant. Defendant did not use the gun on N.Y. R.V. and "a woman" joined N.Y. in attacking defendant. Defendant got hit with a baseball bat. Defendant left the gun and ran out of the house. While running, defendant tripped and lost consciousness. He woke up to police surrounding him.

Defendant never saw the person that was shot, nor did he intend to hurt anyone. He committed the robbery with Tony "to be valued" in his family of gang members. He was 20 years old at the time of the crime. Defendant took the plea agreement and

7.

admitted that he personally and intentionally discharged a firearm because he was "scared" of life without parole. Defendant said he never fired a gun during the course of the robbery.

On cross-examination, defendant admitted that he lied several times and made different statements to law enforcement. He claimed that all his previous stories about the incident were lies created to "protect" Tony. Defendant committed other crimes with Tony in the past and knew Tony "always had a gun."

### 3. The Trial Court's Ruling

After considering the parties' briefing and evidence, the preliminary hearing transcript, and defendant's additional evidence offered by way of testimony under section 1172.6, subdivision (d)(3), the trial court concluded the prosecution met its burden of proving beyond a reasonable doubt that defendant was a major participant who acted with reckless indifference under amended sections 188 and 189. The court first pointed out that defendant was young at the time the crime was committed. The court also noted that defendant told several different stories about what happened throughout the course of the case making it difficult to ascertain the truth. The court found this was a factor when making its ruling.

The trial court's reasoning for denying defendant's petition, was as follows:

"[O]ne of the witnesses at the scene that night . . . testified that after she entered the . . . house . . . the door burst open. There was a domino effect . . . one of the other occupants fell onto her . . . [this] sounds . . . consistent with what . . . defendant said about things being spilled on the floor . . . [it is] uncontroverted . . . defendant had his own gun, defendant . . . started demanding and saying, 'This is a home invasion. Give us the stuff.' Again, [the victim] confirmed that [defendant] had a gun . . . in his hands. [The victim] identified . . . defendant as one of the persons who entered.

". . . [D]efendant pointed the barrel of his gun at [one of the victims], said, 'This is a home invasion. Get the F down, and give us your shit.' That's very, very direct involvement of . . . defendant in this home invasion robbery, which is a very serious matter.

8.

"After the initial entry, there were demands, guests were moved about the house. . . . This wasn't just . . . a smash and grab robbery or something else. There were a lot of things going on all at one time. . . . [R.V.] went out of the house, and then the defendant followed him. . . . [D]efendant still had his own gun. [R.V.] . . . went in the backyard [and] had a knife, and defendant said, 'Hey, put the knife down, bitch. Where is it at?'

". . . [T]here was a gunshot in the house . . . [during] this time when [defendant and R.V.] were outside.

". . . [Defendant] knew that a gunshot had been fired, which is a very significant item. And then even knowing that . . . brought [R.V.] back into the house, [and] was still going to continue on with obtaining the fruits of the robbery which . . . appears like . . . [defendant and Tony] were stealing drugs.

". . . [T]here was a struggle that took place . . . defendant was hurt during the course of the struggle . . . [defendant was] struck . . . [by] a piece of the door frame molding that was damaged from the initial burst . . . .

". . . [T]here was . . . another gunshot . . . [that] went off. . . . [T]here is very direct involvement of . . . defendant . . . in this robbery . . . giving commands, and . . . evidence supporting that . . . weapons were certainly discharged . . . [D]efendant admitted he personally intentionally discharged his weapon as part of his plea. . . .

". . . [W]hen you take [the] very serious fact scenario and compare it to situations under the new law where courts have concluded that the evidence did not meet the standard of culpability required to support [a] felony murder conviction, this does seem to be different than those cases. In this case, [defendant] has a gun. He's wielding it. He's using it. And [the gun is] . . . present for a good portion of the shooting, whether outside or inside struggling for it, there's a lot of direct involvement [on] . . . defendant's part . . . .

"The People were correct when they cited the *Bascomb* case . . . [this] was a very, very similar case. . . .

". . . [A]s part of the decision, the [*Bascomb*] court noted that, 'We are not aware of a single case that concludes a defendant who personally committed a robbery[,] used a gun and was present for a shooting does not meet the standard of culpability required to support a felony murder conviction. The defendants who have shown their culpability was too

9.

slight under the *Banks* case, and the *Clark* case which are cited in the brief are those who are not wielding guns themselves and also not present in the shooting. And because they were acting as getaway drivers or because they were involved in the planning of the crime[.]' . . .

"[The court] thought that was . . . significant. . . . [The court is] looking . . . at the extent of the involvement and extent of culpability. There are some people who are acting as lookouts. Maybe they are the drivers . . . involved in any type of robbery or shooting or don't have guns. . . . That is a different circumstance factually than what we have here.

". . . [Defendant] knew that lethal weapons were being used. He used a firearm, brandish[ed] it. There's evidence of discharge of [the gun] and direct involvement in a pretty extensive residential home invasion robbery." (Italics added.)

## B. Senate Bill No. 1437 and Section 1172.6

Effective January 1, 2019, the Legislature changed the substantive definition of murder by enacting Senate Bill No. 1437.[6] "The new law was designed 'to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' " (Sen. Bill No. 1437, § 1, subd. (f); accord, *Bascomb*, *supra*, 55 Cal.App.5th at pp. 1085–1086.) Senate Bill No. 1437 eliminated natural and probable consequences liability for aiders and abettors of murder and restricted the scope of the felony-murder rule by amending sections 188, subdivision (a)(3) and 189, subdivision (e). (*People v. Lewis* (2021) 11 Cal.5th 952, 957.) As amended, section 188, subdivision (a)(3) now bars the imputation of malice to a person who has merely participated in a crime, while section 189, subdivision (e)(3) allows

---

[6] Before Senate Bill No. 1437, the felony-murder rule made "a killing while committing certain felonies murder without the necessity of further examining the defendant's mental state." (*People v. Chun* (2009) 45 Cal.4th 1172, 1182.) First degree felony murder was "a killing during the course of a felony specified in section 189, such as rape, burglary, or robbery." (*Ibid*.) At the time defendant entered into his stipulated plea and was sentenced, a defendant who participated in a robbery but was not the actual killer could be convicted of first degree murder under the prior felony-murder rule.

felony-murder liability only when a person "was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2." (§ 189, subd. (e)(3); see § 188, subd. (a)(3).)

Senate Bill No. 1437 also added section 1172.6, which allows a defendant who had been previously convicted under one of the now-barred theories of felony murder to file a petition for resentencing to take advantage of the changes retroactively. (*People v. Lewis*, *supra*, 11 Cal.5th at p. 957.) If the petitioner makes a prima facie showing they "could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189" the petitioner is entitled to "a hearing to determine whether to vacate the murder . . . conviction and to recall the sentence and resentence the petitioner on any remaining counts in the same manner as if the petitioner had not previously been sentenced . . . ." (§ 1172.6, subds. (a)(3), (c), (d)(1).) At the show cause hearing, the prosecution must prove "beyond a reasonable doubt, that the petitioner is guilty of murder . . . as amended by the changes to Section 188 or 189 . . . ." (§ 1172.6, subd. (d)(3).) Both the prosecution and the petitioner are permitted to "offer new or additional evidence." (*Ibid*.) The trial court acts as an independent fact finder and determines whether the prosecution has met its burden. (*People v. Ramirez* (2021) 71 Cal.App.5th 970, 984.)

### C. <u>Major Participant and Reckless Indifference</u>

The United States Supreme Court has considered a defendant's degree of conduct and mental state required on nonkillers convicted of murder under a felony-murder theory in both *Enmund v. Florida* (1982) 458 U.S. 782 and *Tison v. Arizona* (1987) 481 U.S. 137.

*Enmund v. Florida*, *supra*, 458 U.S. at page 797 lies at one end of the spectrum. There, the court found the defendant ineligible for the death penalty because although he acted as a getaway driver during an armed robbery where one of his codefendant's shot and killed two victims, the defendant did "not himself kill, attempt to kill, . . . intend that

11.

a killing take place or that lethal force [would] be employed." (*Ibid*.; accord, *Banks*, *supra*, 61 Cal.4th at p. 799.) *Tison v. Arizona*, *supra*, 481 U.S. at page 158 lies at the other end of the spectrum, where the court held that the defendants could be subject to the death penalty "sufficient to satisfy the *Enmund* culpability requirement" because of the defendants' "major participation in the felony . . . combined with reckless indifference to human life." (*Ibid*.)

Our high court presented several considerations relevant to the major participant inquiry, which are:  the defendant's role in planning the criminal enterprise that led to the death of the victim, the defendant's role in supplying or using lethal weapons, the defendant's awareness of particular dangers posed by the nature of the crime, the defendant's presence at the scene of the killing, including whether the defendant was in a position to prevent the actual murder, and the defendant's actions after lethal force was used. (*Banks*, *supra*, 61 Cal.4th at p. 803.)

There is significant overlap between being a major participant and having a reckless indifference to human life. (*Clark*, *supra*, 63 Cal.4th at pp. 614–615.)  To act with reckless indifference to human life, the defendant must knowingly engage in criminal activities that carry a grave risk of death, and this disregard involves a " 'gross deviation from the standard of conduct that a law-abiding person would observe in the [defendant's] situation.' " (*Id*. at p. 617.)  Reckless indifference " 'encompasses a willingness to kill (or to assist another in killing) to achieve a distinct aim, even if the defendant does not specifically desire that death as the outcome of his actions.' " (*In re Bennett* (2018) 26 Cal.App.5th 1002, 1021.)  A defendant's degree of participation in the crime also can affect the reckless indifference inquiry, "the greater the defendant's participation in the felony murder, the more likely that he acted with reckless indifference to human life." (*Tison v. Arizona*, *supra*, 481 U.S. at p. 153.)

In *Clark*, *supra*, 63 Cal.4th at pages 618–622, our Supreme Court established a five-factor test to determine whether a defendant acted with reckless indifference to

12.

human life. As with the factors relevant to major participation, " '[n]o one of these considerations is necessary, nor is any one of them necessarily sufficient.' " (*Id*. at p. 618.) The first factor is the defendant's knowledge of weapons, use, and number of weapons. (*Ibid*.) "A defendant's *use* of a firearm, even if the defendant does not kill the victim or the evidence does not establish which armed robber killed the victim, can be significant to the analysis of reckless indifference to human life." (*Ibid*.) The second factor is the defendant's physical presence at the crime and opportunities to restrain the crime or aid the victim. (*Id.* at p. 619.) If the defendant " 'fails to act as a restraining influence,' " he is arguably more at fault for the resulting murder. (*Ibid*.) The third factor is the duration of the felony. (*Id.* at p. 620.) A longer duration and interaction between the defendant and the victim shows more reckless indifference. (*Ibid*.) The fourth factor is the defendant's knowledge of a coparticipant's likelihood of killing. (*Id*. at p. 621.) A defendant is more culpable if he has knowledge that his coparticipant previously used deadly force and brought "an arsenal of lethal weapons" during the commission of the felony. (*Ibid*.) The fifth factor is a consideration of the defendant's efforts to minimize the risks of violence during the felony. (*Id*. at pp. 621–622.)

### D. <u>Standard of Review</u>

We review the trial court's factual finding for substantial evidence. (*People v. Ramirez, supra*, 71 Cal.App.5th at p. 985.) We view the record in the light most favorable to the judgment and determine whether it contains substantial evidence from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (*Ibid*.)

### E. <u>Analysis</u>

On appeal, defendant does not contest that he was a major participant. His appeal implicates only the question of whether substantial evidence supports the trial court's conclusion that he acted with reckless indifference to human life when he participated in the home invasion robbery.

13.

We turn to the first *Clark* factor, which considers a defendant's knowledge that weapons would be present at the crime, as well as the number of weapons used. (*Clark*, *supra*, 63 Cal.4th at p. 618.) Here, defendant and Tony were both armed with loaded firearms during the commission of the home invasion robbery. Defendant's knowledge and use of a firearm, including pointing and wielding it at the victims throughout the robbery indicates a disregard for their safety and supports the conclusion that defendant acted with reckless indifference. (Cf. *In re Scoggins* (2020) 9 Cal.5th 667, 677 [the defendant did not use a gun, nor did he have knowledge that guns would be used during the commission of the felony, which made the defendant far less culpable than if he brought lethal weapons].)

Turning to the second factor, we assess defendant's physical presence at the scene and opportunity to restrain the crime and aid the victim. (*Clark*, *supra*, 63 Cal.4th at p. 619.) A criminal defendant's "[p]resence at the scene of the murder is a particularly important aspect of the reckless indifference inquiry." (*People v. Garcia* (2020) 46 Cal.App.5th 123, 148.)

In *Clark*, our high court concluded there was insufficient evidence that the defendant acted with reckless indifference to human life because he was not physically present when his codefendant killed the victim, he did not know his codefendant was predisposed to be violent, and the robbery was planned to take place after the store closed when no one was present. (*Clark*, *supra*, 63 Cal.4th at pp. 619–622.) In contrast, defendant and Tony entered a house they knew was occupied, armed with loaded guns. While there is evidence that defendant did not see the actual shooting, defendant was present for the duration of the crime. It was reasonable to conclude defendant fled only after he was physically attacked, not because he sought to stop the crime or render aid to the victims. This is not a situation where defendant acted as the getaway driver or was waiting at another location away from the scene while the crime was taking place. (Cf. *In re Scoggins*, *supra*, 9 Cal.5th at p. 678 [the defendant was not physically present during

14.

the crime but instead was within a half-mile radius, which demonstrated less culpability than a defendant who was physically present at the scene of the crime].)  Defendant also had knowledge that a shot was fired.  Instead of stopping or investigating further after hearing the shot, defendant facilitated the crime by using his gun to complete the robbery.  Defendant's physical presence at the scene of the crime and his overall failure to take any intervening steps to restrain the crime or aid the victims after he heard a shot fired supports the conclusion that defendant acted with reckless indifference as to this factor.

Next, we must consider the duration of the felony.  (*Clark*, *supra*, 63 Cal.4th at p. 620.)  The record here is silent as to exactly how long the felony lasted.  The crime started when defendant and Tony decided to force entry into the house armed with guns.  While inside, defendant made threats, and several people moved in and out of the house.  Defendant followed R.V. outside, told him to drop his knife, and led him back inside to obtain drugs.  Once the drugs were obtained, there was a struggle between defendant and the victims.  As the trial court appropriately stated, this was not a "smash and grab robbery."  There were a lot of things going on at one time; several occupants of the house moved around, and a gun was fired.  As defendant conceded, "it was chaos" inside the house.  Under these circumstances, the evidence is sufficient to show the felony lasted for a duration long enough to suggest that defendant exhibited reckless indifference toward the victims.  (Cf. *Clark*, at pp. 620–621 [the period of interaction between the perpetrators and the victims was designed to be limited, defendant planned the robbery for after closing time when most of the store employees were gone].)

The fourth factor is defendant's knowledge of a coparticipant's likelihood of killing.  (*Clark*, *supra*, 63 Cal.4th at p. 621.)  Such knowledge may be obtained prior to the crime or may occur during the felony.  (*Ibid*.)  The record shows defendant had knowledge both before and during the felony that Tony would use lethal force.  Tony had a propensity for violence.  Defendant committed other crimes with Tony in the past, including burglaries.  Tony was a gang member and defendant knew he "always" used a

15.

gun; indeed, he knew they were both armed with guns during the commission of the crime. Additionally, once defendant heard a shot fired, defendant was acutely aware the situation turned deadly. This factor increases defendant's culpability.

The final factor is defendant's efforts to minimize the risk of violence. (*Clark*, *supra*, 63 Cal.4th at p. 621.) Here, defendant increased the risk of violence at every turn. Defendant willingly forced entry into a private residence, armed with a loaded gun after he saw at least two people walk into the house. (Cf. *In re Scoggins*, *supra*, 9 Cal.5th at p. 683 [the defendant planned an unarmed assault in daylight in a public place].) Moreover, defendant heard a shot fired but failed to intervene and continued to pursue the fruits of the robbery. (*In re McDowell* (2020) 55 Cal.App.5th 999, 1014 [the defendant heard a warning shot fired but failed to intervene, supporting a reasonable inference that the defendant failed to minimize the risk of violence].) Substantial evidence supports the conclusion that defendant failed to minimize the risk of violence.

We agree with the trial court that this case is like *Bascomb*, *supra*, 55 Cal.App.5th 1077. There, the defendant and his codefendant pushed their way into the apartment of a drug dealer armed with guns. (*Id*. at p. 1081.) The defendant held a gun on a victim inside the apartment for several minutes. (*Ibid*.) The codefendant shot another victim inside the bedroom of the apartment. (*Ibid*.) After the shooting, the defendant and his cohort "quickly left together." (*Ibid*.) The defendant was found guilty of first degree murder under a felony-murder theory, and later sought resentencing under section 1172.6. (*Bascomb*, at pp. 1083–1084.) The trial court denied the petition after a hearing and found the defendant was a major participant who acted with reckless indifference to human life. (*Id*. at p. 1084.) The defendant appealed, arguing that the evidence was insufficient to support the court's finding that he acted with reckless indifference. (*Id*. at p. 1087.)

The Fourth District affirmed the order denying the defendant's resentencing petition. (*Bascomb*, *supra*, 55 Cal.App.5th at p. 1091.) The *Bascomb* court reasoned that

the defendant was "willingly involved in the violent manner in which the robbery took place." (*Id*. at p. 1089.) The court found that the defendant pushed his way into the apartment armed, used his gun to threaten the residents, held a victim at gunpoint, and fled once a victim was shot. (*Ibid*.) The court found that the defendant's primary purpose of his threat of violence with a firearm was to enable the robbery. (*Id*. at p. 1090.) Further evidence that confrontation was part of the defendant's plan was shown when the defendant pushed his way into the apartment even though several residents were home. The court concluded, " '[t]his was not a robbery of a convenience store, or a person on the street in which resistance, if any, would be slight, and armed resistance likely nonexistent. This was the planned, armed robbery of a known drug dealer at his residence.' " (*Ibid*.) We find the facts of our case analogous.

Here, defendant personally committed an armed robbery and was present for the duration of the crime. Defendant used his gun; he made threats and pointed his gun at several victims. Defendant heard a shot fired but continued to wield his gun to carry out the robbery. Defendant failed to offer any assistance, fled the scene, and lied to "protect" Tony. (See, e.g., *People v. Oliver* (2023) 90 Cal.App.5th 466, 483–484 [sufficient evidence supported the conclusion that the defendant acted with reckless indifference when the defendant was aware his cohort intended to use a firearm during the robbery and kill one of the victims, the defendant failed to object to the commission of the crime, after the shooting the defendant did not render aid to the victims, and helped "cover up" the crimes].)

Although defendant argues he did not witness the murder, we do not find his argument compelling. The defendant in *Bascomb* was not present in the bedroom where the victim was shot; rather, the defendant pointed a gun at another victim who was forced to lie facedown on the living room floor. (See *Bascomb*, *supra*, 55 Cal.App.5th at p. 1081.) Still, the court held, " 'we are not aware of a single case that concludes a defendant who personally committed a robbery, used a gun, and was present for the

shooting did not meet the standard' of culpability required to support a felony-murder conviction." (*Id*. at p. 1090.)  Defendant conceded he was outside confronting R.V. when the shot was fired.  Defendant was not only present, he used a gun, actively assisted in perpetrating the crime, was aware of the use of lethal force, and failed to cease, intervene, or render aid after the shooting.

In sum, substantial evidence directs us to the conclusion that defendant acted with reckless indifference for human life as to all five *Clark* factors.  There is ample evidence to support the trial court's finding.

## DISPOSITION

The trial court's order denying defendant's section 1172.6 petition is affirmed.


DETJEN, Acting P. J.

WE CONCUR:


FRANSON, J.


MEEHAN, J.


18.